**Steven John RINEHART, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

No. 5585.

Supreme Court of Wyoming.

March 1, 1982.

Gerald M. Gallivan, Director, Wyoming Defender Aid Program, Michael Schilling, Appellate Counsel, and Margaret White, Student Intern (argued), Laramie, for appellant.

Steven F. Freudenthal, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., Crim. Div., and Allen C. Johnson, Sr. Asst. Atty. Gen. (argued), for appellee.

Before ROSE, C. J., and RAPER, THOMAS, ROONEY and BROWN, JJ.

RAPER, Justice.

Appellant was convicted of manslaughter pursuant to § 6–4–107, W.S.1977, 1981 Cum.Supp.[1] He appeals from the judgment and sentence entered against him contending that the expert testimony presented at trial provided an insufficient basis for the jury to find beyond a reasonable doubt that appellant's act was the cause of the victim's death.

We will affirm.

On the night of December 13, 1980, appellant, who at that time was living with Judith K, was left to babysit Ms. K's children. Sometime during the night appellant lost his temper with the youngest child, Heather, who was eleven months old. According to statements made by appellant afterwards, Heather " 'was being a pain in the ass,' " so "he picked her up out of the infant seat, grabbed her around the body and be-gan shaking her, and then he tossed her in the crib or tossed her in her bed and popped her on the rear end."

During the morning of December 14, 1980, Ms. K noticed a bruise on the child's head and asked the appellant about it. At that time appellant disclaimed any knowledge of how it could have gotten there. Later that same day, Heather began displaying several unusual symptoms. She fell asleep particularly early and then when she awoke she began vomiting.

During the next several days these symptoms continued along with an unusual amount of crying. Then on the night of December 16, 1980, Heather was taken to a hospital emergency room in Sheridan. She was later flown to a Denver hospital where she died at 9:38 a. m. on December 17, 1980. An autopsy showed the infant's death to have been caused by cerebral edema or a swelling of the brain which placed too much pressure on the vital centers in the brain stem. Several subdural hematomas were also revealed.

The issue on appeal concerns the sufficiency of the evidence linking the brain swelling and the subdural hematomas to the incident which occurred on December 13, 1980. Appellant contends that the experts in their testimony failed to definitely conclude that the December 13, 1980 incident was the cause of death, and that thus there was an insufficient basis for the jury to find appellant guilty beyond a reasonable doubt.

"The oft-repeated rule by which we test the sufficiency of evidence on appeal of a criminal matter is that we examine and accept as true the evidence of the prosecution, leaving out of consideration entirely the evidence of the defendant in conflict therewith, and we give to the evidence of the prosecution every favorable inference which may reasonably and

---

1. Section 6–4–107, W.S.1977, 1981 Cum.Supp. provides:

"Whoever unlawfully kills any human being without malice, expressed or implied, either voluntarily, upon a sudden heat of passion, or involuntarily, but in the commission of some unlawful act, except as provided in W.S. 31–5–1117, or by any culpable neglect or criminal carelessness, is guilty of manslaughter, and shall be imprisoned in the penitentiary not more than twenty (20) years."

fairly be drawn therefrom. Stated another way—it is not whether the evidence establishes guilt beyond a reasonable doubt for us, but rather whether it is sufficient to form the basis for a reasonable inference of guilt beyond a reasonable doubt to be drawn by the jury when the evidence is viewed in the light most favorable to the State. [Citations.]" *Harvey v. State*, Wyo., 596 P.2d 1386, 1387 (1979).

The prosecution called the doctor who had examined Heather at the hospital emergency room in Sheridan. He testified that in his opinion Heather's condition was caused by a shaking which produced tears in the blood vessel connecting her dura. Also called was the attending physician in Denver. He concurred with the view that Heather's death was ultimately caused by a shaking episode which resulted in the subdural hematoma and severe brain swelling. In his view the injury was most likely sustained within twenty-four to forty-eight hours before Heather's arrival in Denver; however, he also indicated that it could have occurred up to five days before. Finally, the pathologist who performed Heather's autopsy testified that her death was due to cerebral edema. His examination of Heather's body also showed subdural hematomas of hours to days duration. He was also of the opinion the same incident caused the hematomas as well as the brain swelling, though he did acknowledge that it was possible they were caused by different incidents.

It also should be noted that Heather's mother indicated in her testimony that she was aware of no accidents which happened to Heather during the time period of December 13 through December 16. Of further import, Ms. K's testimony reflects that because of the child's illness, Heather was under constant supervision.

Based on the evidence the jury could reasonably have concluded beyond a reasonable doubt that Heather's death was the result of appellant shaking her the night of December 13, 1980. We are not free to substi-

tute our own judgment for that of the jury and therefore must affirm the conviction.

Affirmed.

THOMAS, Justice, specially concurring.

I have no difference with anything that is said in the majority opinion in this case, and indeed I concur in it.

Reference there is made to expert testimony as to the likelihood that the injuries to Heather occurred in closer proximity in time to her death on December 17, 1980, than December 13, 1980. It was on December 13, 1980, that appellant admitted to having assaulted Heather. My perception of the appellant's argument is that it is out of this asserted inconsistency that the claim of insufficient evidence to sustain the conviction arises.

I would foreclose that claim by calling attention to the fact that twice on December 16, 1980, the day before Heather's death, she was in the custody of the appellant. Heather's mother went to work about 9:00 or 9:30 a. m., and arrived home around 4:00 p. m. that day. The appellant babysat the children (Heather and an older brother) while she was at work. That evening Heather's mother went to visit her mother around 9:00 p. m., and about a quarter to 10:00 p. m. she received a telephone call from the appellant advising that Heather was sick and that he had called the ambulance. He had been left in charge of Heather during this period also.

As I understand prior cases before this court, trauma, which according to expert testimony was inflicted by abusing the child, coupled with an opportunity to inflict the injuries, is sufficient evidence to sustain a conviction. *Grabill v. State*, Wyo., 621 P.2d 802 (1980); *Seyle v. State*, Wyo., 584 P.2d 1081 (1978); and *Jones v. State*, Wyo., 580 P.2d 1150 (1978). The evidence of the events on December 16, 1980, together with the expert testimony would be sufficient to sustain a conclusion by the jury that the fatal injuries were inflicted on that day. Consequently, I perceive an alternative theory upon which the jury lawfully could have convicted Rinehart which would be even more consistent with the expert testimony.

I think the message to adults in the State of Wyoming is clear. If a child is injured or dies from injuries that expert testimony advises are consistent with child abuse in the form of physical assault, and an adult person had the opportunity to inflict such injuries, that person may be charged with child abuse or homicide. If that person is convicted he or she can expect no relief from this court when a claim is presented on appeal that the evidence is insufficient to sustain a conviction. Our rule has been formulated for the purpose of deterring this terrible form of human violence, and it will be applied to attain that goal.